May it please the Court, Counsel, there are two primary issues that have been raised on this appeal. One has to do with whether or not the traffic stop in this case was impermissibly extended by the law enforcement officers. Counsel, let me ask you about that first issue. As I understand it, the traffic stop before he was actually busted for the 10 to 12 minutes, is that correct? Do I have the time right? Well, I believe that the entire duration of the traffic stop up to the point where the canine officer arrived was approximately 11 to 12 minutes, that's correct. In the briefing, we've divided the traffic stop into various segments to demonstrate to the Court why that traffic stop was impermissibly extended. The first point is what interested me, the 11 to 12 minutes before the dog sniff, because once the dog sniffed, then they had probable cause. That's correct. When I get a speeding ticket, it takes longer than that, it doesn't seem that long, it doesn't seem extended, and I think it has to be under, what is it, Cabales? It's the Cabales case, Your Honor. Well and I guess that's going to be the question for the Court to ultimately resolve is whether or not this stop was impermissibly extended, given the entire facts and circumstances in this case, and it may be that while various individuals are, some traffic stops may take longer than others, the question is, in this case, did the traffic stop exceed the... In this case, or is it the standard of a reasonable stop? What I'm thinking is some police write fast, and then you get their ticket back and you read it. Correct. Some of them, they draw every letter. Yes. It's not like I get speeding tickets every day, but I've gotten them where they draw every letter, and it takes forever, and I'm thinking the reasonable, ordinary traffic stop, 10 or 11 minutes or 12 minutes would be pretty fast, rather than slow. I guess it depends on the facts and circumstances of any particular stop, and the facts and circumstances of this case. What we know is, is that, and there's no argument that the officer had a good reason to pull over the appellant at the time he did so, he was clearly speeding 10 miles in excess of the posted speed limit, and took the first five minutes to return to his vehicle, run a warrants check to make sure that he wasn't a wanted man, run a criminal records check, and to verify his information that was on his registration, because the appellant did not have his driver's license on him at the time. That took a total of five minutes. It was then at that point that the officer had an obligation to begin to, I wouldn't say necessarily hurry through the writing of the traffic citation, but at least to expeditiously complete what is necessary to finish the stop. Why does he have to do it expeditiously? Why can't, I mean, it isn't reasonable to say to the policeman, well, if you suspect there's drugs there, you have to hurry it along. I think that whether or not... Isn't the idea just that he can't interfere with the man's liberty more than is reasonable for a speeding ticket? That is correct. Unless something else comes along before he's done? And he certainly, there was simply just no articulable suspicion whatsoever that drug activity had occurred, given what the facts and circumstances of this case were. But what we know is, is that at the five minute point, the officer had all of the information that he needed to fill out the Idaho uniform citation. Now I might ask the court to take judicial notice of Misdemeanor Criminal Rule 5 and Idaho Criminal Rule 5, which is the Idaho Supreme Court's mandate as to what Idaho uniform citations look like. And if we look at... Did he actually finish filling it out? I'm sorry? Did he finish filling it out in five minutes? Well, the testimony at the suppression hearing revealed that the officer who affected the stop had finished filling out the citation at the time the K-9 unit pulled up. That's 11 or 12 minutes. That was at the 11 or 12 minute point. Seeing he had all the information, they never let you go before they finished filling out the ticket? That's correct. And so then the question is, is when we compare how long it took him to fill out that Idaho uniform citation, I might just invite the members of the court to take their own driver's license and fill one out and see how long it takes you, maybe while watching TV with some distractions. It certainly should not have taken five minutes and 14 seconds. And when we couple that with the officer's sworn testimony that he had every intention of holding the appellant at that location until such time as the drug dog arrived, what we have is an impermissible extension that is not authorized under the U.S. Supreme Court, the Cabelas case. I think he said if it had been 20 minutes, he would have let him go. Well, the judge, the district court in this case said that five minutes and 14 seconds seems okay, but seven or eight minutes may have been a problem. And so the question is, at what point is the stop impermissibly extended? And what we know for certain is that at the time that the K-9 officer showed up, and I use the K-9 officer because the officer's name was exactly the same as the defendant's name in this case. But at the time the K-9 officer showed up, Officer Stoffel was completed doing what he needed to do. At that point, he had to give him the ticket and let him go on his way without continuing to hold him there to permit the drug dog to do its work. So you're suggesting that as long as he was riding the ticket, the K-9 unit was welcome to circle the car, but at the moment that he finished riding the ticket, if the dog was only halfway around the car, then the dog had to stop and he had to let him go? That is exactly correct, because the Supreme Court has not given us any particular test with respect to when the drug dog sniff can begin and when the drug dog sniff can end. But what we do know from the Cabela's decision is that the drug dog sniff can certainly occur during the legitimate portion of the stop. And that's what Cabela said was perfectly acceptable police behavior, because there is no expectation of privacy with respect to that issue. However, once the purpose of the stop has been completed, and it certainly was in this case before the drug dog began doing his work, the officers had an obligation to let him go. And if they saw him ten minutes later engaging in some other type of activity that was inconsistent with the Idaho traffic laws, they could have stopped him again, and during that traffic stop could have searched the car or done the drug sniff in a perfectly legitimate manner. Mr. Charney, what happened when the officers stopped riding the ticket? Did they tear it out of a little book or something? I think that that's accurate. This fellow then torn out the ticket, handed the ticket to the fellow, to the defendant, and then the dog came up? I'm not sure that the ticket actually was ever issued in this case, because the appellant in this case was beginning to get frustrated with the duration of the stop, and as the briefing demonstrates, he stepped out of his vehicle to ask the officers, what's going on? Why are you holding him? He'd have to do it. That is certain. Getting out of his car and approaching the officers, that's going to cause things to be delayed a bit, too, or some time to go by. Correct. But the officers simply could have told him, get back in the car, and handed him his ticket and sent him on his way, or handed him his citation as he approached the officers. But there was certainly just the mere fact of getting out of his vehicle, asking what's going on, was not illegal activity, criminal activity, obstructive activity. He was inquisitive. The officer responded to telling him, well, just stay there, stay by the car, or something like that. Right. And then... Then the dog came by? How did the dog... The record is somewhat unclear on that, but what it appears happens is that there was some sort of ensuing interaction between the appellant and the officers. The appellant was handcuffed, and then the SNF took place. I have only a minute... The SNF took place after the defendant was handcuffed? It's actually unclear as to exactly when that occurred, but it's likely that the SNF took place while he was in his vehicle. I have only one minute left. Yeah. Okay, counsel. I'll ask the... I'll ask Judge Kleinfeld to give you some additional time. Okay. I want to make sure I've got the chronology right. I want to follow up on Judge Thompson's question. The officer writes the ticket. At what point does the K-9 unit arrive? Is he still writing the ticket? He is completing, pursuant to the testimony, I believe at page 33 of the transcript, he is finishing up the ticket at the time the K-9 unit arrives. At the very bottom of the memorandum order of the district court, very last lines, and we carry over to page 5, the fact still remains that he had not completed the speeding ticket or possibly had completed it at the same moment Corporal Brown arrived on the scene. That suggests that he may not have even finished the ticket by the time that the K-9 unit arrives there. But the transcript, I believe at page 33 of the transcript, reveals... I'm sorry. Page 34 of the transcript. My time is going to expire. May I continue with the answer? My question to the officer, your previous testimony was also that at the time that Officer Brown showed up, you had completed writing out this citation, correct? And the officer's answer was correct. You did not return my client's documents and this citation to him and then send him on his way, did you? The officer's answer was no. And that's at page 34 of the transcript from the suppression hearing. So without any doubt, the officer had completed his obligation at that point in time with respect to writing out the ticket and he was constitutionally permitted to hand him the ticket and send him on his way. Cabellos does not stand for the proposition that the stop can be extended any longer than it was and even one second, one minute, or five minutes. But if he's still writing the ticket at the time that the K-9 unit arrives and when your client sees the K-9 unit, he steps out of the car, correct? At that point, we now have additional delay, don't we? Maybe just enough delay for the officers to tell him to get back in the vehicle. And beyond that, there would not be any more delay. Counsel, as I read Cabellos, what they did was they overturned a more restrictive Illinois Supreme Court decision. That's correct. And they said that in a 10-minute delay for a justified ticket, it's not unlawful even though it's combined with a sniff. Now what I'm wondering is, let's suppose, hypothetically, the ticket is all done when the dog gets out of the dog handler's car. Yes. Let's just suppose this hypothetically. The dog takes about a minute to circle the car and alert on the door. The policeman could have given the man his ticket and said, you may be on your way. Yes. But he didn't because the dog has just gotten out of the car and it's only going to take a minute for the dog to do a sniff. This is hypothetical, but it may be the facts of this case. I don't know. Yes. Why is that a significant incursion on the driver's liberty? Because it's simply an extension of the stop that has nothing to do with the original basis for the traffic stop. Once again, what Cabellos permits... An innocent person driving along... Yes. ...would be irritated at being stopped for a speeding ticket. Might delay him getting to the airport or McDonald's or wherever he wanted to go. But once he's got the 10- or 12-minute irritation, I can't see why he'd be irritated by one more minute. I don't think that it's a question of whether or not we are irritated by police conduct or not irritated by police conduct. It's the question of what does the consequence... I think it may be. We have fancier words for it, significant incursion on liberty or something like that. True. That's what it amounts to. Well, what it amounts to, though, is officers basically just going on a fishing expedition for otherwise unrelated activity when they have no basis to do so. They've completed the purpose for the infraction citation, the speeding stop, so to speak, and then they think, well, let's go on here a little bit and poke around and see if we can find something else without any reasonable basis to do so. We had some reasonable basis. This guy did something really unusual. He got out of his car and he locked the door behind him. Hardly anyone does that. I'm not sure that the officers... Don't worry about car thieves when you're in the middle of getting a speeding ticket. Right. I'm not sure that the officers knew at that point in time he had locked the door, but he had certainly got out of the vehicle, and then when they tried to go in, they discovered that he had locked the door. But, you know, overall, even though what he... One in the morning near a drug house. About 1.20 in the morning near what... They already had their eye on this guy. I'm sorry? And they already had their eye on this guy. Well, they had done one welfare check at his residence and turned up no activity. They found no warrants on him, and he was simply driving in an area of a known drug house at 1.20 in the morning, but that in and of itself did not give them reason to believe that he had been engaging in any criminal activity. I would imagine within five blocks of where we are right now that there has been some drug-related activity going on. Does that mean any of us in this room are suspects because we're here? I don't think so. That doesn't arise... That doesn't give a police officer reasonable articulable suspicion. Well, I've taken you way over your time. You have. I need a minute for rebuttal anyway. I appreciate that. May it please the support of counsel, let me start by talking about the chronology of the events that seem to be a question that this court had. After Officer Stoffel had met with the defendant and talked to him just briefly, talked to him about his travel plans, he went back to his vehicle and at that point in time radioed for the canine unit to come to his location on an unrecorded channel. It doesn't show up on the dispatch watch, but we do know that at 127 and some odd seconds that the canine unit had checked out en route to the location. While Officer Stoffel then begins to run his warrants checks and also begins to... 127 would be six minutes after this began, is that correct? Yes, Your Honor. Yes, Your Honor. It starts at 121, the NCIC is at 126? Yes, Your Honor. And 127 is when the canine unit checks out as en route. He was at the police department, which was a mile or so away from, a couple of miles away from the location of the stop. Now, you actually have a copy of the citation that was not served on Mr. Brown. It's in the supplemental excerpt of the record at page 87. So you can see all of the information that Officer Stoffel had to fill out. So really what the district court found was, or what the district court looked at in this case, was a time frame of 5 minutes and 14 seconds, an unreasonable period of time for Officer Stoffel to write this citation. And the district court, of course, found that it wasn't because, one, the officer had some unfamiliarity with writing the citation, two, the information that he had to fill out in the citation, and three, during the stop, he had to also divert his attention to what was going on around his vehicle, what was going on in the defendant's vehicle. I know the defense has pointed to the officer's subjective intent. I just would reiterate that the Supreme Court has been very clear that it's the objective facts that the court needs to focus on, not... I mean, you make a pretty good argument for having the 5 minutes to write the ticket. Maybe some officers could have done it faster, some would do it slower. This fellow said, well, I wasn't going to let him go until I finished it, but it didn't matter if 5 minutes is a reasonable time. He made a pretty good argument on that. And just as he's finishing it up, he has no writing, more writing to do, the dog appears. And the defendant is held while the dog does a sniff. Now, if the defendant hadn't got out of the car, would that be okay? Yes. Yes, it would be, because the officer still had to serve the citation on the defendant. So the stop was... Handed it to him. Yeah, handed him the citation, and then I think there's always some exchange between the officer... Pull back the citation while the dog makes a sniff around the car. Yes. And in this case, I believe the testimony was the sniff took about 20 to 30 seconds. I would also point out that when the defendant exited his vehicle and came back toward the officers, that the officers told him, we're going to run the dog around your car. And he said, okay, whatever. So there's an indication that he didn't have any problem whatsoever with the dogs. That's right, I remember that. He said we're going to run the dog, and he said okay. That's in the audio transcript that was admitted at the hearing. So he did agree that it was okay, whatever. I don't mind if you run the dog around my vehicle. And I'd also just point out that aside from the question about whether the five-minute and 14-second period of time was reasonable to complete a citation, also the officers had a reasonable articulable suspicion to detain this defendant longer. And I'd also point out that Mr. Charney talked about the fact that he was coming from an area of a known drug house and that they had familiarity with this defendant based on a welfare check that involved allegations of drug use. But also, this defendant's discussion of his travel plans was inconsistent with where the officer had just followed him from. So you need to also factor that in to whether this officer had reasonable articulable suspicion to prolong this stop. Unless there's any questions for me, I don't have any. Another question? You already know from my question to your colleague that I'm wondering basically what the big deal is if your speeding ticket stop is delayed for an extra one minute or so after the policeman could have given you back your license and given you registration and given you your speeding ticket. Is there some authority that really says one way or the other whether that extra minute or so is a legally significant delay in getting your liberty back? I'm not aware of any authority, Your Honor. The only test I'm aware of is the reasonableness test. I'm not aware of any authority that says it is. I guess all he puts it is what would be a reasonable time to write the ticket. But they're not really confronting the question that I've raised. What they're doing is reversing the Illinois Supreme Court. The question, therefore, didn't arise. There the dog sniff was while the ticket was still being written and it was less than a 10-minute stop. They just didn't confront this. I'm thinking somebody must have sensed. I'm not aware of any. I apologize, Your Honor. Incidentally, is it correct that this fellow didn't have his license? The policeman says, give me your license and registration. He says, I forgot my license. He didn't have it with him. I don't know where it was at. Can he be ticketed for that in Idaho? He can be, yes. I don't know if it's either a misdemeanor or infraction, but he can be ticketed. I'm not sure he could be arrested. The officer didn't write him up for that, though? No, he did not. No, he did not. The district court issued an alternative finding. Do you want to defend that in the three minutes you've got? The reasonable articulable suspicion? Yes. Well, the facts are well articulated by the officer. We're well articulated by the officer at the hearing. I want to make sure I understand exactly what the alternative holding is. Does the alternative holding mean that if Defendant Brown had been driving within the speed limit, that the officer nevertheless would have had reasonable suspicion to pull him over? No, I don't think that's what the district court said. What the district court said was even if this was an extension of the traffic stop, it was justified because during the stop, in addition to what the officer had observed before, the officer developed reasonable articulable suspicion to continue to extend the traffic stop to Given that he's in a drug area and that he's been evasive about where he's been and what route he's taking. And there's been allegations that he was involved in drug activity that the officer was personally aware of. Yes. Is the theory there that even taking it at worst for your side of the case, the policeman has up to the time of the dog sniff a traffic stop justification for stopping the man, and then after that he has a Terry stop justification because of positive dog sniff, past contact with the man, the time of night, the drug house, walking the store, and no license? Yes, Your Honor. Is that it? That's it, yes. Traffic stop turns into a Terry stop. Correct, based on what the officer observed before and then what had occurred during the stop for the speeding. Yes. Your Honor, that's all I have. Unless there's any questions for me, we simply ask that this Court affirm the District Court's denial of the defendant's motion to suppress. Thank you very much. Thank you, Counsel. Can I have his extra time? Your Honor, you had questioned whether or not authority exists. It does. At page 10 of my brief, I pointed out two cases, one from the U.S. Supreme Court, that says a detention must be carefully tailored to its underlying justification and may last no longer than is necessary to effectuate the purpose of the stop. The Tenth Circuit said the Fourth Amendment requires that the officer making a traffic stop detain the driver only as long as is reasonably necessary to issue a citation or warning. So authority does exist both from the United States Supreme Court and at least one other circuit with respect to that issue. Counsel, if we were to agree with you on this point, then what do we do with the alternative holding? Simply reverse on that question. There is no articulable suspicion that's demonstrated in this case. This is very similar to the Cabela's case where we have nothing more from the officer's subjective analysis of the facts in this case, nothing more than a vague hunch of possible wrongdoing. If I can briefly just go through those facts, if that would be acceptable. The defendant had absolutely no warrants whatsoever. There was not an indication of significant criminal history. He may have been somewhat evasive in the officer's mind about where he was going, but so was the person in Cabela's. The defendant, as per the officer, was not associated with the drug house, and the welfare check that had been done at the defendant's house by that officer previously revealed no problems and no indication of drug activity whatsoever. There was not a single fact in this record to support any articulable suspicion. There was nothing more than a vague hunch, and for that reason the district court's order must be reversed. Thank you, Counsel. United States v. Brown is submitted.
judges: Thompson, Kleinfeld, Bybee